**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ANGELO LENELL DAVIS,          )
                                     )     Civil Action No. 11 –1506
           Plaintiff,       )
                                     )
         v.                 )     Chief Magistrate Judge Lenihan
                                     )
MICHAEL HARLOW, *et al*.,       )
                                     )     ECF No. 49
           Defendants.     )

## MEMORANDUM OPINION

This case is before the Court on the Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 49) filed by Defendants Michael Harlow, Dorina Varner, Louis Folino, Tracy Shawley, Tina Staley, Sgt. Young, Sgt. Matthews, Oddo Mitchell, Carla Swartz, Lorinda Winfield, Tim Macknair, Sue Cowan, David Swartz, Donna Nickolas, Sgt. Michniak, Freddy Nunez, C.O. G. Baker and Lt. Bupka.[1]  For the reasons stated herein, the motion will be granted in part, denied in part, and denied without prejudice in part.  All claims in Plaintiff's Second Amended Complaint will be dismissed with prejudice except for Plaintiff's retaliation claims against Defendants Cowan, Nickolas, Swartz, Macknair, Staley, Guyton, Burris, Winfield, Matthews, Bupka, Baker, Mitchell and Rogers.  Defendants may reassert their argument regarding exhaustion of administrative remedies in a properly filed motion for summary judgment.

---

[1] Plaintiff also names as Defendants:  Albert Motariantella, Karan Grishkin, Jeffrey Rogers, Michael Guyton, Scott Burris, Davidson, Walker, Joanne Toma, Sgt. Rigney, and Jemie Gaster.  As of the date of this Memorandum Opinion, however, these Defendants have not yet been served.  Pursuant to this Memorandum Opinion and accompanying Order, Plaintiff's claims against Defendants Motariantella, Grishkin, Davidson, Walker, Toma, Rigney and Gaster will be *sua sponte* dismissed with prejudice and the Court will order the United States Marshal to mail a copy of Plaintiff's Second Amended Complaint and a request for waiver of service of summons to Defendants Rogers, Guyton and Burris.

# I. PROCEDURAL HISTORY

Angelo Lenell Davis ("Plaintiff") is a Pennsylvania state prisoner currently incarcerated at the State Correctional Institution at Greene ("SCI-Greene"). He initiated this action on November 28, 2011, and his Second Amended Complaint was filed on June 20, 2012. (ECF No. 46.) His hodgepodge of claims stem from various instances of alleged mistreatment while at SCI-Greene. The moving Defendants have filed a Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 49-50), and Plaintiff has responded in opposition to their motion (ECF No. 58-63). It is now ripe for review.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff's allegations are disordered and difficult to reconstruct. He alleges that he was improperly transferred to SCI-Greene on May 28, 2008. Plaintiff was then housed in J-block, an outside community corrections center. On September 5, 2008, he started his final institutional prescribed program, a "Batterer's Intervention Group," and on September 18, 2008, he was approved as a custody level two inmate and assigned to a community work program crew to begin on October 7, 2008.

Before Plaintiff could complete the Batterer's Group program or begin his employment, he lost his outside housing status, work release assignment, and program privileges due to a parole moratorium issued by the Governor on September 28, 2008. Plaintiff alleges that these privileges were revoked improperly by J-block supervisors Defendants Cowan and Nickolas because he earned the privileges before the parole moratorium was imposed. He later sought and was denied retroactive payment for lost wages due to the loss of his community work program assignment. According to Defendant Grishkin, Plaintiff could not receive retroactive pay for a job he was never assigned to.

Plaintiff alleges that on December 21, 2008, he had a death in his family and was required to return to general population for thirty days. He complains, however, that he was improperly housed in the psychiatric ward for five days, and, although he was eventually placed in general population, he was never returned to his outside housing unit.

Next, Plaintiff alleges that Defendant Cowan wrongfully made him re-start the Batterer's Group program despite the fact that he had already completed over three months of the program. He complains that she constructively denied him parole and extended his term of incarceration because had he been allowed to complete the program from where he left off he would have been eligible for parole on April 29, 2009. However, he also alleges that he was denied parole on April 29, 2009, because Defendants Cowan and Nickolas submitted false reports to the parole board to influence their decision and because he received a negative recommendation from the DOC for not taking responsibility for his crime for which he says he did not commit.

Plaintiff was given a negative recommendation from the DOC and denied parole again on May 24, 2010. He complains that it was impossible for him to receive a negative recommendation from the DOC while at the same time meeting the criteria for an incentive based transfer. He also complains that the DOC submitted false and misleading reports to the parole board because of the many grievances he had filed against Defendant Cowan and other officials and because he again would not demonstrate remorse for his underlying conviction.

On or about October 15, 2010, Plaintiff was transferred from C-block to K-block and placed under the supervision of Defendants Macknair and Staley. Plaintiff complains that he should have received an incentive based transfer to SCI-Fayette in his home region instead of being moved to a different housing unit at SCI-Greene and that his transfer to K-block and subsequent alleged mistreatment while in K-block was in retaliation for him filing grievances

against Defendant Cowan. Two incidents occurred while Plaintiff was housed on K-block. Plaintiff alleges that on December 26, 2010, Defendant Michniak deliberately denied him a staple for his petition for allowance of appeal *nunc pro tunc* to the Pennsylvania Supreme Court. Consequently, Plaintiff alleges that he received a notice of defective filing and his petition was subsequently denied. Another incident occurred when Plaintiff submitted grievances against Defendants Young and Martin for cursing at and threatening him in front of other inmates on April 7, 2011, and against Defendant Ferrier for ordering that Plaintiff be written up "for anything he does." Plaintiff alleges that Defendants Matthews and Bupka later attempted to intimidate him into withdrawing these grievances and to submit no further grievances against staff.

The situation escalated when Plaintiff submitted a request to Defendant Staley. He desired to be removed from his cell due to his cellmate's "rough play." Plaintiff alleges that K-block Defendants Staley, Matthews, and particularly Baker deliberately mischaracterized the request as a threat, in retaliation for Plaintiff's previous grievances against staff. On May 9, 2011, Plaintiff received a misconduct for the threat on May 9, 2011, and, as a result, certain personal property was allegedly confiscated. Subsequently, Plaintiff appeared at a disciplinary hearing before Defendant Nunez. He complains that he did not receive due process because he was not given twenty-four hours notice to prepare a defense and none of his witnesses were present for his hearing. Nunez found Plaintiff guilty of the misconduct and sanctioned Plaintiff to sixty days of disciplinary confinement for the alleged threat. Because of the sanction, Plaintiff lost his job. Plaintiff complains that there was no evidence to support the finding of guilt. He appealed the decision but Defendants Swartz, Folino and Varner upheld the decision. According to Plaintiff, the misconduct was later dismissed on July 18, 2011. He later sought back pay for

lost wages due to the loss of his job but was denied by Defendant Grishkin because the misconduct was merely dismissed but he was not exonerated for the offense. He also sought the return of his seized property confiscated as a result of the misconduct but complains that Defendant Rigney ignored his requests.

After disciplinary confinement, Plaintiff was transferred to B-block as a level four custody inmate and placed under the supervision of Defendants Guyton and Burris. Plaintiff was placed among more dangerous inmates, and enjoyed less freedom than as a level two inmate. He complains that his level two status and other earned privileges should have been returned after the misconduct was dismissed. While on B-block, Plaintiff was once again denied early release due to an unfavorable recommendation by Defendants Guyton and Burris for Plaintiff's failure to take responsibility and demonstrate remorse for his crime.

### III. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement,"
> but it asks for more than a sheer possibility that a defendant has
> acted unlawfully. Where a complaint pleads facts that are "merely

> consistent with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States

Court of Appeals for the Third Circuit discussed its decision in Phillips v. County of Allegheny,

515 F.3d 224, 232-33 (3d Cir. 2008) (construing Twombly in a civil rights context), and

described how the Rule 12(b)(6) standard had changed in light of Twombly and Iqbal as follows:

> After Iqbal, it is clear that conclusory or "bare-bones" allegations
> will no longer survive a motion to dismiss: "threadbare recitals of
> the elements of a cause of action, supported by mere conclusory
> statements, do not suffice." Iqbal, 129 S. Ct. at 1949. To prevent
> dismissal, all civil complaints must now set out "sufficient factual
> matter" to show that the claim is facially plausible. This then
> "allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged." Id. at 1948. The
> Supreme Court's ruling in Iqbal emphasizes that a plaintiff must
> show that the allegations of his or her complaints are plausible.
> See Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n. 3.

Fowler, 578 F.3d at 210.

Thereafter, in light of Iqbal, the United States Court of Appeals for the Third Circuit in

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), set forth the following two-prong test

to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions. [Iqbal, 129
> S. Ct. at 1949]. Second, a District Court must then determine
> whether the facts alleged in the complaint are sufficient to show
> that the plaintiff has a "plausible claim for relief." Id. at 1950. In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an
> entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the
> Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts
> do not permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not 'show[n]'-
> 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

> This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id</u>.

<u>Fowler</u>, 578 F.3d at 210-11.

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; <u>Chester County Intermediate Unit v. Pennsylvania Blue Shield</u>, 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider indisputably authentic documents. <u>Spruill v. Gillis</u>, 372 F.3d 218, 223 (3d Cir. 2004); <u>Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993); <u>Golden v. Cook</u>, 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. <u>Dluhos v. Strasberg</u>, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." <u>Higgins v. Beyer</u>, 293 F.3d 683, 688 (3d Cir. 2002) (quoting <u>Holley v. Dep't of Veteran Affairs</u>, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this

is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

## IV. DISCUSSION

### A.    Statute of Limitations

In analyzing civil rights claims, the Supreme Court has held that these claims are most analogous to common law tort actions, and are subject to the state statute of limitations for personal injury actions. *See* Owens v. Okure, 488 U.S. 235 (1989); Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 559 (3d Cir. 1998). The Pennsylvania statute of limitations on a personal injury action is two years. *See* 42 Pa. Const. Stat. Ann. § 5524. In addition, the limitations period began to run when Plaintiff knew or should have known of the injury forming the basis for this civil rights action. Sameric, 142 F.3d at 599; Gera v. Commonwealth of Pennsylvania, 256 F. App'x 563, 564-65 (3d Cir. 2007).

Plaintiff filed his Complaint on November, 22, 2011;[2] therefore any claim premised on alleged unlawful conduct that occurred prior to November 22, 2009, is barred by the statute of limitations. This includes Plaintiff's claims arising out of his transfer from SCI-Fayette to SCI-Greene on or about May 28, 2008; revocation of pre-release status, program codes, outside housing status, and work release assignment privileges due to the parole moratorium issued on September 28, 2008; denial of lost wages due to loss of community work program assignment;

---

[2] This is the filing date under the "mailbox rule." Pennsylvania and federal courts employ the prisoner mailbox rule. *See* Perry v. Diguglielmo, 169 Fed. Appx. 134, 136 n.3 (3d Cir. 2006) (citing Commonwealth v. Little, 716 A.2d 1287 (Pa. Super. Ct. 1998)); Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998). Under this doctrine, a prisoner's *pro se* pleading is deemed filed when delivered to prison officials for mailing. *See* Burns, 134 F.3d at 113; Commonwealth v. Castro, 766 A.2d 1283, 1287 (Pa. Super. Ct. 2001) (deemed filed when given to proper prison authority or placed in a prison mailbox).

placement in psychiatric ward on December 21, 2008; constructive denial of parole for having to restart the Batterer's Group program; and denial of support for parole and denial of parole on April 24, 2009. Consequently, these claims will be dismissed with prejudice.

**B.      Fifth Amendment**

Plaintiff asserts a violation of his Fifth Amendment right against self-incrimination because Defendants Cowan, Macknair, Guyton, Nickolas, Swartz, Staley, and Burris conditioned favorable recommendations for parole upon admission and remorse for his crime. Plaintiff, however, cannot state a claim for a violation of his Fifth Amendment rights because accepting responsibility and showing remorse for his crime would not be considered "compelled" testimony within the meaning of the Fifth Amendment.

The Supreme Court has noted that, while the privilege against self-incrimination "does not terminate at the jailhouse door," it is well established that a "broad range of choices that might infringe constitutional rights in a free society fall within the expected conditions of confinement of those who have suffered a lawful conviction." McKune v. Lile, 536 U.S. 24, 36 (2002) (Kennedy, J., plurality). In McKune, the Supreme Court held that the adverse consequences faced by a state prisoner for refusing to make admissions required for participation in a sex offender treatment program were not so severe as to amount to compelled self-incrimination because the prisoner's refusal did not extend his prison term or affect his eligibility for good time credits. Similarly, the Third Circuit has held that the Fifth Amendment is not violated when a prisoner's refusal to admit guilt results in such adverse consequences as the repeated denial of parole. See Roman v. DiGuglielmo, 675 F.3d 204, 214 (3d Cir. 2012); Thorpe v. Grillo, 80 F. App'x 215, 219 (3d Cir. 2003) (because inmate's refusal to admit his guilt and the resulting inability to participate in sex offender program did not extend his term of

incarceration or automatically deprive him of consideration for parole, he could not state a Fifth Amendment claim).

Here, Plaintiff is serving a lawfully-imposed sentence. If parole is granted, he would obtain a benefit. If it is denied, he is in no worse position than he was before. The pressure to accept responsibility for the crimes for which he was convicted in order to improve his chances for parole does not make his admissions "compelled" for purposes of the Fifth Amendment. Indeed, the Third Circuit has stated:

> Those penalties that merely alter the degree of comfort or freedom that an inmate is afforded, within the context of his confinement, but that otherwise remain within the permissible bounds of the inmate's prescribed sentence, are differences in measure alone and thus do not amount to compulsion under the Fifth Amendment. In contrast, penalties that go beyond the mere "unpleasant" and are different in kind than those conditions of confinement imposed on all prisoners – that strike at the core of an inmate's recognized entitlements, that threaten his bodily safety, or that impose additional punishment beyond that already imposed by fair judicial process – constitute impermissible compulsion under the Fifth Amendment.

Roman, 675 F.3d at 214. For these reasons, Plaintiff's Fifth Amendment claim will be dismissed with prejudice.

## C.     Denial of Incentive Based Transfer

Plaintiff claims that he was wrongfully denied an incentive based transfer to a facility in his home region in violation of his due process rights. It is well-established law that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. *See* Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215, 225 (1976). Plaintiff has alleged nothing to make the denial of his request for an incentive based transfer actionable under the circumstances presented. As such, his claim will be dismissed with prejudice.

## D.     Access to Courts

Plaintiff claims that on December 26, 2010, he was denied access to the courts when Defendant Michniak denied him the use of a staple so that he could staple his petition for leave to file a petition for allowance of appeal *nunc pro tunc* with the Pennsylvania Supreme Court so as to be in compliance with the Rules of Appellate Procedure. Because of this, he claims that he received a notice of defective filing and his petition was later denied. Under the First Amendment, prisoners have a right of access to the courts. *See* <u>Lewis v. Casey</u>, 518 U.S. 343 (1996). Importantly, however, where an inmate does not allege an actual injury to his ability to litigate a claim, his constitutional right to access the courts has not been violated. *See* <u>id</u>. at 351-53. An actual injury is shown only where a nonfrivolous claim, or one of arguable merit, is lost. *See* <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2003); *see also* <u>Monroe v. Beard</u>, 536 F.3d 198, 205 (3d Cir. 2008).

Plaintiff's pleadings and exhibits belie any contention that he suffered an actual injury as a result of being denied a staple for his petition. Instead, the Notice of Defective Filing dated December 30, 2010, which Plaintiff submitted in response in opposition to Defendants' Motion to Dismiss, clearly demonstrates that the defect lied in his inclusion of arguments as to why allocator should be granted and not his failure to staple his petition. (ECF No. 61-4 at 15.) Although Plaintiff suggests that his petition was denied because he was denied the use of the staple, public records clearly indicate otherwise. *See* <u>Commonwealth v. Davis</u>, No. 20 MM 2011 (Pa. 2011). Because Plaintiff cannot show that he suffered any kind of actual injury as a result of being denied a staple for his brief, his access to courts claim will be dismissed with prejudice.

### E.    Claims Arising Out of the May 9, 2011 Misconduct

Plaintiff complains that the misconduct issued against him was false and that he was denied procedural due process protections in connection with his disciplinary hearing;

specifically, more than 24-hours to prepare a defense, the right to present witness on his behalf, and a finding of guilt supported by sufficient evidence.

First, it is well established that the act of filing a false disciplinary charge does not itself violate a prisoner's constitutional rights even if it may result in the deprivation of a protected liberty interest. *See* Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (A "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), *cert. denied*, 485 U.S. 982 (1988). Instead, inmates have the right not to be deprived of a protected liberty interest without due process of law. Thus, where the prisoner is provided due process, no constitutional violation results from being falsely accused of a misconduct. *See* id. at 952-53 (holding that "the mere filing of [a false] charge" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and he had the opportunity to rebut the unfounded or false charges"); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984) (finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff v. McDonell, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional violation); Strong v. Ford, 108 F.3d 1386, published in full-text format at 1997 U.S. App. LEXIS 5176, 1997 WL 120757 (9th Cir. 1997) (the alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federal right protected by section 1983 when it does not result in the imposition of atypical hardship on the inmate in relation to the ordinary incidents of prison life). *See also* Creter v. Arvonio, No. 92-4493, 1993 U.S. Dist. LEXIS 11016, 1993 WL 306425, at *7 (D. N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109, 1988 U.S. Dist. LEXIS 12534, 1988 WL 91571, at *1 (D. N.J. Aug. 30, 1988) (determining that

"the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest . . . where procedural due protections were provided").

The threshold question presented by Plaintiff's claim is whether the sanction imposed, sixty-days disciplinary confinement, impacted a constitutionally protected liberty interest which would invoke the procedural due process protections of which he alleges he was denied. In this regard, the Supreme Court has held that prison conditions deprive a prisoner of a state created liberty interest that is protected by due process guarantees when they result in "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483 (1995). Applying this test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In making this determination, the Supreme Court looked at two basic factors: (1) the amount of time the prisoner was placed into disciplinary segregation; and (2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive. After reviewing these two factors, the Supreme Court concluded that thirty days in disciplinary detention, which was similar in many respects to administrative custody, did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

Here, Plaintiff cannot show that he his sixty-day disciplinary confinement impacted a constitutionally protected liberty interest for which he was entitled to due process protections. Courts within this Circuit and the State of Pennsylvania, applying Sandin in various actions, have found no protected liberty interest implicated by placement in disciplinary custody for longer amounts of time. See Smith v. Mensinger, 293 F.3d 641, 652 (3d Cir. 2003) (Seven months

disciplinary confinement did not implicate liberty interest); <u>Griffin v. Vaughn</u>, 112 F. 3d 703, 708 (3d Cir. 1997) (Finding that fifteen months in administrative custody did not deprive plaintiff of a liberty interest and thus he was not entitled to procedural due process protection.); <u>Young v. Beard</u>, 227 F. App'x 138, 141 (3d Cir. 2007) (holding that absent allegations showing that conditions in disciplinary confinement for 930 days imposed atypical and significant hardship on an inmate in relation to ordinary incidents of prison life, the inmate was not entitled to procedural protections required by due process during prison disciplinary proceedings); <u>Abney v. Walker</u>, No. 2:06cv1248, 2007 U.S. Dist. LEXIS 36166, 2007 WL 1454265, at *3 (W.D. Pa. May 17, 2007) (adopting Report and Recommendation finding that 75 days in the RHU did not trigger due process protections); <u>Brown v. Blaine</u>, 833 A.2d 1166, 1172 (Pa. Commw. Ct. 2003) (Four months in the long term segregation unit was not an "atypical and significant hardship."). Plaintiff's allegations simply do not support an entitlement to procedural due process protections. As such, these claims will be dismissed with prejudice.

## F. Loss of Prison Job and Wages

Plaintiff makes a number of allegations concerning the revocation of his community work assignment due to the parole moratorium and loss of his prison job due to the May 9, 2011 misconduct and subsequent disciplinary confinement. He also alleges that he was wrongfully denied lost wages for both jobs. Although Plaintiff's claims arising from the revocation of his community work assignment are barred by the applicable statute of limitations, *see supra*, his claims nevertheless fail because Plaintiff has no constitutionally protectable interest in prison employment. *See* <u>James v. Quinlan</u>, 866 F.2d 627, 629-30 (3d Cir. 1989) (recognizing that inmates have no constitutional right to be assigned to a particular job; an inmate's expectation of keeping a specific prison job, or any job, does not implicate a property interest under the

Fourteenth Amendment); <u>Bryan v. Werner</u>, 516 F.2d 233, 240 (3d Cir. 1975) ("We do not believe that an inmate's expectation of keeping a particular prison job amounts either to a 'property' or 'liberty' interest entitled to protection under the due process clause."); *see also* <u>Fidtler v. Pa. Dept. of Corrections</u>, 55 F. App'x 33, 35 (3d Cir. 2002) ("we have held that a state inmate does not have a liberty or property interest in prison employment"). Moreover, to the extent Plaintiff seeks to assert an Eighth Amendment claim, the loss of a prison job, regardless of the reason, does not amount to cruel and unusual punishment. *See* <u>Clark v. Maryland Dept. of Pub. Safety and Corr. Serv.</u>, 316 F. App'x 279, 281 (4th Cir. 2009) ("[A]s prisoners do not have a constitutionally protected right to work while incarcerated, termination from a prison job does not constitute an Eighth Amendment violation."); <u>Ivey v. Wilson</u>, 832 F.2d 850, 955 (6th Cir. 1987); <u>Fox v. Taylor</u>, No. 04-1257, 2005 U.S. Dist. LEXIS 21045 (D. Del. Sept. 27, 2005) (no Eighth Amendment claim for loss of prison job); <u>Roach v. Kligman</u>, 412 F. Supp. 521, 527 (E.D. Pa. 1976) (no Eighth Amendment claim for failure to provide higher wages in prison job so as to afford personal hygiene products and legal materials); *see also* <u>Rhodes</u>, 452 U.S. at 347-49 (state actions that limit jobs and educational opportunities do not constitute punishments under the Eighth Amendment, must less punishments that inflict unnecessary and wanton pain)). Consequently, Plaintiff's claims stemming from the loss of both jobs and their respective wages must be dismissed with prejudice.

## G.    Deprivation of Property

Plaintiff claims that he was wrongfully denied the return of his personal property that was confiscated as a result of the misconduct issued against him on May 9, 2011. In this regard, Plaintiff's claim fails "if a meaningful post-deprivation remedy is available for the loss." <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984). The Third Circuit Court of Appeals has held that

the Pennsylvania Department of Corrections' grievance procedure "provides an adequate post-deprivation remedy" in satisfaction of the Due Process Clause for prisoners making claims for damage to or loss of personal property.  Durham v. Dep't of Corr., 173 F. App'x 154, 157 (3d Cir. 2006); *see* McEachin v. Beard, 319 F. Supp. 2d 510, 514-15 (E.D. Pa 2004) (citing Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000)).  Furthermore, it is not relevant whether the alleged loss of property occurred as a result of negligent or intentional conduct.  Hudson, 468 U.S. at 533.

Here, Plaintiff cannot state a claim for a procedural due process violation based on Defendants' failure to return his confiscated property because he had an adequate post-deprivation remedy available to him through the Department of Corrections' inmate grievance procedure.  This remedy was not rendered inadequate simply because Plaintiff was not successful at seeking the return of his property.  Tarselli v. Harkleroad, No. 10-1266, 2012 U.S. Dist. LEXIS 22839, at *19-20 (W.D. Pa. Feb. 23, 2012) (concluding that "the failure of a prison official to provide a favorable response to an inmate grievance does not demonstrate that the process was inadequate, meaningless, or otherwise constitutionally infirm") (citing, *inter alia*, Austin v. Lehman, 893 F. Supp. 448, 454 n.4 (E.D. Pa. 1995) ("Of course, that Plaintiff did not prevail in this procedure in no way affects the procedure's adequacy as a post-deprivation remedy.")).  Moreover, even assuming the prison grievance procedure was inadequate, which the Court specifically finds it was not, an adequate post-deprivation remedy was still available to Plaintiff in the form of a state tort action.  *See* Shakur v. Coelho, 421 F. App'x 132, 135 (3d Cir. 2011) (holding Pennsylvania Tort Claims Act provided adequate post-deprivation remedy for willful deprivation of property); Mattis v. Dohman, 260 F. App'x 458, 461 (3d Cir. 2008) (upholding dismissal of a prisoner's claim for deprivation of property based in part on the fact

that the prisoner "could also have pursued a state tort suit for conversion of property"); Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (same); Morales v. Beard, No. 09-162, 2009 U.S. Dist. LEXIS 66272, 2009 WL 2413425, at *2 (W.D. Pa. 2009) (holding even if prison grievance system was inadequate, prisoner still had "at least one adequate post-deprivation remedy in the form of a state law tort suit"). For these reasons, Plaintiff cannot state a procedural due process claim based on the deprivation of his property.

To the extent Plaintiff is attempting to make a substantive due process claim, again, his allegations fail to state a claim because the loss or destruction of his property simply does not shock this Court's conscience. See, e.g., United Artists Theatre Circuit, Inc. v. Township of Warrington, Pa., 316 F.3d 392, 399-400 (3d Cir. 2003) ("our cases have repeatedly acknowledged that executive action violates substantive due process only when it shocks the conscience."). See also Moore v. Gluckstern, 548 F. Supp. 165, 167 (D. Md. 1982) ("At worst, plaintiff alleges that the items were stolen by the guards. While such action by prison guards, if proven, would clearly be wrongful, there is nothing about the alleged incidents that could conceivably 'shock[] the conscience' of the court. Therefore, the complaint cannot be read as alleging a violation of substantive due process rights.").

Finally, to the extent Plaintiff is alleging that the deprivation of his property constituted a violation of his Fourth Amendment right not to have his property unreasonably seized, he also fails to state a claim as a matter of law. The protections of the Fourth Amendment with respect to seizures of prisoner's "effects" or property simply do not apply in the prison context. Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001) ("The Hudson court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration."); Jones v. Arpaio, 194 F.3d 1317 (9th Cir. 1999) ("Finally, there is no merit to

Valandingham's contention that jail officials violated his constitutional rights when they failed to return documents, correspondence, and postage seized following a search of his cell.") (citing Hudson, 468 U.S. at 527-28) (holding that Fourth Amendment's prohibition against unreasonable seizures does not apply in prison). Accordingly, Plaintiff has no Fourth Amendment protections against the loss or destruction of his property and this claim fails as a matter of law.

## H.  Conspiracy

Plaintiff seeks to raise a conspiracy claim against Defendants Winfield and Cowan under 18 U.S.C. §§ 241 & 242.  However, these are criminal statutes that do not allow for a private cause of action.  *See* Walthour v. Herron, No. 10-1495, 2010 U.S. Dist. LEXIS 44221, 2010 WL 1877704, at *3 (E.D. Pa. May 6, 2010).  As such, this claim will be dismissed with prejudice.

To the extent Plaintiff attempts to raise a claim for conspiracy under 42 U.S.C. § 1983, his claim also fails.  In order to demonstrate a § 1983 civil conspiracy, a plaintiff is required to show that "two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law."  Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993); *see also* Royster v. Beard, 308 F. App'x 576, 579 (3d Cir. 2009).  While the Third Circuit is "mindful that direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances . . ., the rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."  Capogrosso v. Supreme Ct. of N.J., 588 F.3d 180, 185 (3d Cir. 1009) (quoting Crabtree v. Muchmore, 904 F.2d 1475, 1481 (10th Cir. 1990)); *see also* Adams v. Teamsters Local 115, 214 F. App'x 167, 175 (3d Cir. 2007) (a conspiracy claim cannot proceed merely upon the conclusory averment that a conspiracy took

place but rather requires factual averments that would support the inference that the defendants engaged in concerted or joint action). Plaintiff conclusively alleges that some sort of conspiracy existed between Defendants Winfield and Cowan to deny him a transfer to SCI-Fayette. Not only are Plaintiff's allegations insufficient to state a claim for conspiracy, but a reading of his Second Amended Complaint and response in opposition to Defendants' motion indicate that his claim is really one of retaliation for filing grievances. As such, to the extent Plaintiff is seeking to bring a conspiracy claim under section 1983, it will be dismissed. His retaliation claim is discussed *infra*.

## I.      Retaliation

Plaintiff asserts numerous instances where he was allegedly retaliated against for filing grievances against Defendant Cowan and other DOC officials. Upon review of the Second Amended Complaint, the Court has identified the following allegations of retaliation that are not barred by the applicable statute of limitations: (1) the unfavorable recommendation and submission of false and misleading reports to the parole board that led to the denial of his parole on May 24, 2010 and January 27, 2012;[3] (2) his transfer to K-block instead of receiving an incentive based transfer to a facility in his home region;[4] (3) being intimidated into withdrawing grievances he had filed against Defendants Young, Martin and Ferrier;[5] (4) receipt of a false misconduct for threatening his cellmate on May 9, 2011;[6] (5) his transfer to B-block as a level four custody inmate after serving disciplinary confinement and the failure to restore level two custody privileges even though the misconduct against him was later dismissed.[7]

---

[3] This retaliation claim is asserted against Defendants Cowan, Nickolas, Swartz, Macknair, Staley, Guyton and Burris.
[4] This retaliation claim is asserted against Defendants Swartz, Macknair and Winfield.
[5] This retaliation claim is asserted against Defendants Matthews and Bupka.
[6] This retaliation claim is asserted against Defendants Staley, Matthews, Baker and Mitchell.
[7] This retaliation claim is asserted against Defendant Rogers.

It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution, which is actionable under section 1983. Rauser v. Horn, 341 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action" at the hands of prison officials;[8] and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Rauser, 241 F.3d at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). Once Plaintiff has made his *prima facia* case, the burden then shifts to Defendants to prove by a preponderance of the evidence that he or she "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Rauser, 241 F.3d at 334 (incorporating Turner v. Safley, 482 U.S. 78, 89 (1987)).

Here, Plaintiff has satisfied the first element of a retaliation claim by allegedly engaging in protected activity, the filing of grievances. *See* Booth v. King, 346 F. Supp. 2d 751, 762 (E.D. Pa. 2004); Allah v. Al-Hafeez, 208 F. Supp. 2d 520, 535 (E.D. Pa. 2002). Moreover, it is plausible that the alleged acts of retaliation were sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Therefore, the Court finds that Plaintiff has sufficiently stated, if just barely, retaliation claims such that dismissal is not warranted at this time. However, because retaliation claims can be easily fabricated, courts must view prisoners' retaliation claims with sufficient skepticism. *See* Jones v. Beard, No. 07-951, 2009 WL 1913302, at *3 (W.D. Pa. July 2, 2009) (citing Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.

---

[8] With respect to the second factor, an adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

1996)) (other citations omitted). Plaintiff should be aware that he faces a high burden in demonstrating retaliation in the manners in which he alleges. Specifically, Plaintiff must demonstrate the crucial third element of a retaliation claim, causation, which requires him to prove either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See* <u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007); <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 503-04 (3d Cir. 1997). Moreover, Defendants will be able to defeat his retaliation claims if they can demonstrate that they would have taken the same action even absent Plaintiff filing grievances. At this time, however, Defendants' motion will be denied and Plaintiff's retaliation claims will proceed.

**J.    Ex Post Facto Clause**

Plaintiff claims that the parole moratorium issued by the Governor presumably changed DOC policy and procedures and rendered him ineligible for pre-release and certain privileges with regard to his custody level, work release assignment and participation in programs such as the Batterer's Group. Plaintiff claims that he earned these privileges, which were necessary for him to receive parole, prior to the parole moratorium being imposed and that the revocation of the privileges violated the Ex Post Facto Clause of the United States Constitution. First, to the extent that this claim is connected to Plaintiff's denial of parole on April 24, 2009, it is barred by the applicable statute of limitations as discussed in section A, *supra*. To the extent it is connected to any subsequent denial of parole, it is subject to dismissal for the following reasons.

The Ex Post Facto Clause precludes a statutory or policy change that alters the definition of a crime or increases the punishment for a given crime. <u>Calif. Dept. of Corr. v. Morales</u>, 514

U.S. 499, 506 n.3 (1995); Newman v. Beard, 617 F.3d 775, 784 (3d Cir. 2010). As the United

States Court of Appeals for the Third Circuit has explained:

> It is thus clear from the Supreme Court cases that have reviewed legislative changes affecting parole decisions that, to demonstrate an ex post facto claim, a plaintiff must show that the effect of a retroactive change in the law or policy created a "significant risk" that the sentence ultimately served will be increased above and beyond what was prescribed when the crime was consummated, as a result of the new law. Allegations that changes in the law have produced "some ambiguous sort of 'disadvantage,' [or] . . . affect[ed] a prisoner's '*opportunity* to take advantage of provisions for early release,'" are not sufficient grounds for bringing an ex post factor claim. Morales, 514 U.S. at 506 n.3 (citations omitted).

Pa. Prison Soc'y v. Cortes, 622 F.3d 215, 238-39 (3d Cir. 2010).

Even accepting Plaintiff's allegations as true, as the Court must do at this stage of the

proceedings, his Ex Post Facto Clause claim fails as a matter of law. As a result of the parole

moratorium, Plaintiff allegedly suffered a loss of privileges and opportunities for which he

claims he was subsequently denied parole. This change in the law and DOC policy and

procedures did not create a "significant risk" that Plaintiff's sentence would be increased but

merely operated to his disadvantage to take advantage of certain conditions necessary for early

release. "[T]here is no ex post facto violation where the retroactively applied law does not make

one's punishment more burdensome, but merely creates a disadvantage." Spuck v. Ridge, 347 F.

App'x 727, 729 (3d Cir. 2009). Because of this, his claim will be dismissed with prejudice.

**K.      Failure to Exhaust Administrative Remedies**

Defendants move to dismiss Plaintiff's Second Amended Complaint based on Plaintiff's

failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act

("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996). They note that Plaintiff only identified

one grievance in his complaint, which he attached as Exhibit B, and that the grievance relates

only to property and lost wages issues of which do not state cognizable claims. The exhaustion

requirement, however, is an affirmative defense to be pleaded by the defendant. A prisoner/plaintiff need to plead and prove compliance with the exhaustion requirement in his complaint. Jones v. Bock, 549 U.S. 199, 216 (2007); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). As such, Defendants' motion will be denied without prejudice on this ground and they may reassert this argument in a properly filed motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 49) will be granted in part, denied in part, and denied without prejudice in part and Plaintiff's Second Amended Complaint will be dismissed with prejudice on all claims except Plaintiff's retaliation claims. Defendants may reassert their argument with regard to exhaustion of administrative remedies in a properly filed motion for summary judgment. A separate order will follow.

Dated: March 22, 2013

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

Cc:     Angelo Lenell Davis
        SCI Greene
        175 Progress Drive
        Waynesburg, PA 15370
        *Via U.S. Postal Mail*

        Counsel of Record
        *Via ECF Electronic Mail*